## Hattie C. Druce, Appellee, v. Edward J. Druce, Appellant.

Gen. Nos. 9,702 and 9,721.

Opinion filed January 14, 1942.  Rehearing denied February 27, 1942.

R. W. CHURCHILL, of Grayslake, and HALL & HULSE, of Waukegan, for appellant.

CASSELS, POTTER & BENTLEY, of Chicago, and J. A. MILLER, of Waukegan, for appellee; L. H. VOGEL and H. G. MARSHALL, both of Chicago, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

In Gen. No. 9,702 appellee procured a decree for divorce from appellant in the circuit court of Lake county on the ground of extreme and repeated cruelty, with alimony in gross of $25,000 and $1,250 solicitor's fee, from which he has appealed.  In Gen. No. 9,721 the same appellant seeks reversal of a subsequent decree awarding appellee $1,250 solicitor's fees and $250 for expenses in connection with the appeal in Gen. No. 9,702.  For the purposes of this opinion the two causes have been consolidated in this court.

The parties were married in January 1928, after appellee had been employed as appellant's housekeeper for about two years.  Each of them had children by former marriages.  No child was born of the present union.  Each of them has property, the value of which, and appellant's income, is in dispute.  Appellee was seventy years of age at the time of the hearing.  Appellant was one year older.  During the winter of 1932, while they were in Florida, appellant left appellee.  Upon her return to Illinois she procured, without a contest, a decree for separate maintenance of $100 per month.  The parties were reconciled in the autumn of that year.  Their final separation took place on or about April 25, 1939.  On

April 26th appellee instituted a suit for separate maintenance. By an amended and supplemental complaint filed December 2, 1939, she sought a divorce.

In Gen. No. 9,702 appellant urges the complaint is insufficient to charge extreme and repeated cruelty; that the proofs fail to establish such a charge; and that the court erred in awarding alimony in gross and solicitor's fee.

As to the sufficiency of the complaint, paragraph 6 charges: "That on or about April 8, 1939, without provocation, defendant struck plaintiff with his fist; that on or about April 15, 1939, without provocation, defendant pushed plaintiff violently against a chair, wrenching her back, thereby causing considerable pain." No other specific act is charged by the complaint. Appellant claims the allegation as to the alleged act on April 8th is insufficient to charge extreme cruelty, and that, therefore, the complaint charges only one act of extreme cruelty, that of April 15th, and not repeated acts of that kind, as required by the statute. However true that may be, he is in no position to assert that contention here. By joining issue and going to trial without in any way calling the attention of the court or appellee to the alleged insufficiency, he waived the defect, if any. (Section 42, Civil Practice Act, Ill. Rev. Stat. 1941, ch. 110, par. 166(3) [Jones Ill. Stats. Ann. 104.042].) He cannot now for the first time challenge the sufficiency of the complaint. (*Connett v. Winget,* 374 Ill. 531.) Furthermore, he has overlooked his statement on page 2 of his brief that: "In such complaint, filed December 2nd, 1939, plaintiff alleges two specific acts of extreme and repeated cruelty (par. 6), one on April 8th, 1939, and the other on April 15th, 1939."

Appellee testified that on April 8, 1939, in the kitchen of their home, appellant struck her with his fist on her chest; that she was "knocked out"; that he knocked her until she had to sit down or fall down;

that on April 15th, in the kitchen, such a thing occurred again; that he struck her, pushed her behind the door and jammed it against her three times, so she could not go into the other room; that as a result she was knocked unconscious, lay on the floor for some time, and had to be taken to Dr. Hoag's office the next day; and that she did not say or do anything on either occasion to cause appellant to do the acts mentioned; that after the alleged assault on April 15th, there were black and blue marks on the left side of her face, forehead, chest and abdomen which were visible and black; that such a thing also occurred on February 16th; that altogether she had been struck hard blows about fifteen or twenty times on a number of days, when she would either sit or fall down; that he would always "come with a lot of liquor down." On cross-examination appellee testified the separation took place on April 25th; that up to three or four days after that, when he came back, there had been no quarrel between them at any time; that he "just left" without any reason, and before that time he had not struck her at all; that the occurrences to which she had testified happened after he left and came back. She particularly mentioned the two alleged assaults and said they were after he had left. She then said the time he struck her with his fist was on April 8th, and that thereupon she heard him tell Frank Druce in the yard that he had given her "a damn good shaking up and next time would finish her." She later said the time appellant talked to Frank Druce was after he left on the 25th, and that the occasions when she testified he was drunk were after he left.

Flora Deely, a daughter of appellee, testified that on April 8th appellee called her by telephone; that she was crying and hysterical and said: "Ed has beat me up"; that the witness called the doctor and made an appointment for the following day; that she saw appellee two or three hours later and her arm was black

and blue; that she again said appellant had struck her; that the next day she met appellee at Dr. Hoag's office where she received treatment, and averaged coming there for treatment once or twice a week for some time; that appellee called her on April 15th and said appellant had struck her again with a door; that she made arrangements to get her in to the doctor and saw her the next day at his office; that she was hurt through her breast and back, very sore, and the witness saw black and blue marks; and that appellee again said she had been hit with the door.

Mrs. Ada Pavey, another daughter of appellee, testified she was called by her sister and met appellee at Doctor Hoag's office in Waukegan on April 9th; that her wrist and arm were bruised, and she said appellant had struck her with his fist; that she received medical attention at that time from Dr. Hoag; that she again met appellee at the doctor's office on April 16th; that her back and breast were bruised; that she said appellant had hit her with the door in the kitchen, and received medical attention on that day. She testified she fixed the dates by receipts from the doctor, which they had, but no such receipts were produced.

Appellant denied striking appellee on the occasions mentioned or at any other time. He denied he was ever under the influence of liquor during their married life, and testified he only took a glass of beer occasionally with a meal in hot weather. Testimony of men acquainted with him tends to corroborate his testimony that he was not a drinking man.

Dr. Hoag testified he did not treat appellee for injuries of any kind during the month of April 1939, and did not treat her for anything on April 9th or 16th; that his only treatments of her in April were on the 3rd, 6th, 11th and 18th, at her home, for arthritis and neuritis, with swollen and painful knees and wrist, followed by treatments at his office on April 20th, 22nd and 28th, and four times in May for the same condi-

tion; that on June 3, 1939, he treated her for bruises over the right shoulder, right elbow and wrist. On cross-examination he said appellee told him appellant had caused them; that he had no idea how long it takes for a bruise on a person in her physical condition to clear up; that they could have occurred some time previous and he supposed it possible for them to have occurred as long as five weeks before.

Betty Brown, the housekeeper during April, testified she arrived between the 1st and 5th; that appellee was in bed at that time and during the following two weeks; that she was in bed on April 8th, did not go to Waukegan on April 9th or 15th and did not show any sign of injury to her; that there was no fuss between the parties on April 8th or 15th to her knowledge, and no physical encounter; that appellee was fussing all the time, and as to any unpleasantness on the 15th, there was so much confusion that she did not know what it was all about; that prior to the time appellant left, she heard cross words and knew they were quarrelling, but as to knowing whether appellant struck appellee or not, she did not see anything at all.

Appellee's testimony as to the character of her injury on April 8th does not agree with that of her daughters. She testified she was struck on the chest, while they testified to seeing bruises on her arm and wrist. As to the injuries on April 15th, appellee testified to visible bruises on the left side of her face and forehead, her chest and abdomen, while they testified only to bruises on her chest and back. Mrs. Brown saw no bruises on appellee. Although she was there, she never saw any physical encounter between the parties, and the testimony of Dr. Hoag flatly contradicts the testimony of appellee and her daughters as to treatments for the alleged injuries and as to visits to his office on April 8th and 15th. We can reach no other conclusion than that the decree is against the

manifest weight of the evidence. It must accordingly be reversed.

The testimony of appellee's daughters as to what she told them about the injuries being inflicted by appellant was clearly not a part of the *res gestae* and it was error to admit it. Inasmuch as the decree must be reversed upon another ground, this error need not be further discussed. So, too, the claim that the court erred in awarding alimony in gross need not be considered.

The claim that the allowance in the divorce decree of $1,250 for solicitor's fee was error, is based upon the ground that it was not allowed upon an application filed prior to the trial. On May 1, 1939, appellee filed her motion for allowance of temporary alimony and solicitor's fees. On May 3rd the motion for temporary alimony was denied and the matter of solicitor's fees was reserved until the final hearing. On October 19th appellee filed a petition for temporary alimony and solicitor's fees, and appellant filed his answer thereto; but the matter was not passed upon by the court or reserved until the final hearing. This was all during the pendency of the complaint for separate maintenance. No motion or petition to that end was filed after the filing of the amended and supplemental complaint for divorce.

It has been held that the provision of the statute is to enable the wife to maintain the suit, and it contemplates the provision shall be made in advance; and that the performance of services by a solicitor where such provision is not so made creates no liability against the husband. (*Newman v. Newman*, 69 Ill. 167; *Anderson v. Steger*, 173 Ill. 112.) Section 15 of the Divorce Act (Ill. Rev. Stat. 1941, ch. 40, par. 16 [Jones Ill. Stats. Ann. 109.183]) provides: "The court may, however, in its discretion reserve the question of the allowance of attorney's fees and suit money

until the final hearing of the case and may then make such order with reference thereto as may seem just and equitable, regardless of the disposition of the case." The Separate Maintenance Act (ch. 68, par. 22 [Jones Ill. Stats. Ann. 109.189]) makes a like provision.

In our opinion the amended and supplemental complaint for divorce was not a mere amendment to enable appellee to sustain the claim for which the original suit was intended to be brought, as provided for in section 46 of the Civil Practice Act (ch. 110, par. 170 [Jones Ill. Stats. Ann. 104.046]), but was a separate and distinct cause of action, as also mentioned in that section. This is evidenced by the fact that divorce and separate maintenance are treated in separate chapters of the statute, and that in divorce the period of an award for alimony is not restricted, while in separate maintenance it is limited to two years. There having been no provision made for solicitor's fees in the divorce case and the matter not having been reserved in that case until the final hearing, the chancellor erred in awarding the solicitor's fee. However, even if the divorce proceeding was the same cause of action as the suit for separate maintenance, we think that by filing her petition on October 19th, appellee abandoned any benefit of the ruling on her motion of May 1st, and thereafter there is no indication that the court reserved the matter until the final hearing.

While the trial court had authority to make a reasonable allowance for expenses and attorney's fees in connection with the appeal from the divorce decree, the printed brief of appellee contains only 23 pages, including the title page. We think that $1,250 for solicitor's fees and $250 for expenses on appeal is excessive, and should not exceed $500 for solicitor's fees nor more than $100 for expenses.

The decree in Gen. No. 7,902 is reversed and the cause is remanded. The decree in Gen. No. 7,921 is

reversed and the cause is remanded with directions to proceed in accordance with the views herein expressed.

*Decree in Gen. No. 9,702 reversed and cause remanded.*

*Decree in Gen. No. 9,721 reversed and cause remanded with directions.*